IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| RICHARD JAMES BAILEY,<br><br>Plaintiff,<br><br>vs.<br><br>MARTIN O'MALLEY,<br>Commissioner of Social Security,<br><br>Defendant. | Case No. 24-cv-00103-DKW-WRP<br><br>**ORDER REVERSING DECISION OF COMMISSIONER OF SOCIAL SECURITY AND REMANDING FOR FURTHER ADMINISTRATIVE PROCEEDINGS**[1] |

Plaintiff Richard James Bailey appeals the denial of his applications for disability insurance benefits and supplemental security income, asserting that the Administrative Law Judge (ALJ) erred when evaluating Bailey's oral testimony and the opinions of various doctors, resulting in a residual functional capacity (RFC) that was not supported by substantial evidence. Upon review of the parties' briefing and the record *in toto*, the Court agrees that the RFC is unsupported by substantial evidence in at least one material part: specifically, the ALJ's conclusion that Bailey is able to work at a consistent pace *throughout the workday*. The record provides no support for the conclusion that Bailey can perform work for an *entire* workweek, let alone consistently for at least 29 of 30

---

[1] Pursuant to Local Rule 7.1(c), the Court elects to decide this matter without a hearing.

days per month, as required. Therefore, as more fully explained below, this case is REMANDED for further analysis by the ALJ.

## BACKGROUND

### I. Review of Disability Claims

A five-step process exists for evaluating whether a person is disabled under the Social Security Act (SSA). 20 C.F.R. § 404.1520; 20 C.F.R § 416.920. First, the claimant must demonstrate that he is not currently involved in any substantial, gainful activity. *Id*. §§ 404.1520(a)(4)(i), (b); §§ 416.920(a)(4)(i), (b). Second, the claimant must show a medically severe impairment or combination of impairments that significantly limit his physical or mental ability to do basic work activities. *Id*. §§ 404.1520(a)(4)(ii), (c); §§ 416.920(a)(4)(ii), (c) Third, if the impairment matches or is equivalent to an established listing under the governing regulations, the claimant is judged conclusively disabled. *Id*. §§ 404.1520(a)(4)(iii), (d); §§ 416.920(a)(4)(iii), (d).

If the claimant's impairment does not match or is not equivalent to an established listing, the Commissioner makes a finding about the claimant's RFC to perform work. *Id*. § 404.1520(e); § 416.920(e). The evaluation then proceeds to a fourth step, which requires the claimant to show his impairment, in light of the RFC, prevents him from performing work he performed in the past. *Id*.

§§ 404.1520(a)(4)(iv), (e), (f); §§ 416.920(a)(4)(iv), (e), (f). If the claimant is able to perform his previous work, he is not disabled. *Id*. § 404.1520(f); § 416.920(f). If the claimant cannot perform his past work, though, the evaluation proceeds to a fifth step. *Id*. §§ 404.1520(a)(4)(v), (g); §§ 416.920(a)(4)(v), (g). At this final step, the Commissioner must demonstrate that (1) based upon the claimant's RFC, age, education, and work experience, the claimant can perform other work, and (2) such work is available in significant numbers in the national economy. *Id*. § 404.1560(c); § 416.960(c); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (explaining that, at Step Five, the burden moves to the Commissioner). If the Commissioner fails to meet this burden, the claimant is deemed disabled. 20 C.F.R. § 404.1520(g)(1); § 416.920(g)(1).

## II. Bailey's Administrative Proceeding

On April 10, 2023, the ALJ issued a decision finding Bailey "not disabled" for purposes of disability insurance benefits and supplemental security income. Administrative Record (AR) at 40. At Step One of the evaluation process, the ALJ determined that Bailey had not engaged in substantial gainful activity since the alleged onset date of August 28, 2020. *Id*. at 20. At Step Two, the ALJ determined that Bailey had the following severe impairments: "bipolar I disorder; substance abuse disorder, alcohol and cannabis; and spinal sprain." *Id*. At Step

Three, the ALJ determined that Bailey did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in the governing regulations. *Id*. at 20-25.

Before reaching Step Four, the ALJ determined that Bailey had the residual functional capacity to perform light work, except as follows:

> [C]an understand, remember, and carry out simple instructions and make simple work-related decisions; can sustain an ordinary routine without special supervision, and can tolerate occasional changes in work setting; can work at a consistent pace throughout the workday, but not at a production rate pace where each task must be completed within a strict time deadline; can tolerate occasional interaction with coworkers and supervisors (after the initial training period) and the public; and can tolerate a low level of work pressure defined as work not requiring multitasking, very detailed job tasks, significant independent judgment, a production rate pace, or teamwork in completing job tasks.

*Id*. at 25-38.

At Step Four, the ALJ determined that Bailey was unable to perform any past relevant work. *Id*. at 38. At Step Five, the ALJ determined that, in light of Bailey's RFC, age, education, and work experience, he could perform jobs existing in significant numbers in the national economy. *Id*. at 39-40. Specifically, a vocational expert testified that Bailey could do the jobs of: photocopy machine operator; advertising materials distributor; and housekeeping cleaner. *Id*. at 39.

4

This determination resulted in the ALJ finding that Bailey was not disabled from August 28, 2020 through the date of the decision. *Id*. at 40.

On January 4, 2024, the Appeals Council denied Bailey's request for review, making the ALJ's decision the final decision of the Commissioner of the Social Security Administration. *Id*. at 1.

## STANDARD OF REVIEW

A court must uphold an ALJ's decision "unless it is based on legal error or is not supported by substantial evidence." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). "Substantial evidence is more than a mere scintilla but less than a preponderance." *Id*. (quotation omitted). Stated differently, "[s]ubstantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (quotation omitted). "Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Id.*; *see also Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014) ("[Courts] leave it to the ALJ to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record.") (citations omitted).

## **DISCUSSION**

In his Opening Brief, Dkt. No. 10, Bailey challenges the ALJ's assessment of his oral testimony and the opinions of his various treating doctors. In both instances, Bailey argues that the ALJ's determinations failed to account for the effect of his bipolar disorder on his ability to maintain employment. Bailey also claims that the ALJ did not account for the nature of his bipolar disorder in that, while the medical records reflect *some* periods of calm in his mental health, they are repeatedly followed by periods of instability. Bailey argues that these failures led to an RFC unsupported by substantial evidence. In its Answering Brief, Dkt. No. 12, the government argues that the ALJ properly discounted Bailey's testimony and the opinions of his doctors because the same were inconsistent with the medical records and his activities of daily living.

As discussed further below, the Court agrees that remand is necessary here for further explanation and analysis of Bailey's ability (or lack thereof) to perform a full workday for a sustained period of time. Whether viewed through the prism of Bailey's own testimony or the opinions of his doctors, the base question here is whether Bailey, as an individual diagnosed with a mental health impairment (bipolar disorder), is able "to sustain ongoing mental performance for a full workday…." *See* Soc. Sec. Admin. Program Operations Manual System (POMS)

DI 24510.061, https://secure.ssa.gov/poms.nsf/lnx/0424510061 (last visited Aug. 22, 2024) (describing as "essential" an individual's ability to sustain ongoing mental performance for a full workday). Here, based upon review of the parties' briefs and the administrative record, there is no evidence adequately explaining how the ALJ reached the conclusion that Bailey could, at least not during the period from the alleged onset date to the date of the ALJ's decision.

In the RFC, the ALJ determined that Bailey could work at a "consistent pace throughout the workday," but not at a production rate pace. AR at 25. As support for this finding, the ALJ cited the reports of state agency psychological consultants, who determined that Bailey could complete simple tasks at reasonable pace with minimal interruptions during a normal workday. *Id*. at 33. The ALJ further found the RFC consistent with medical evaluations reflecting that Bailey, *inter alia*, had passive suicidal ideations and abnormal affect, and was frustrated, anxious, and paranoid. *Id*. at 33, 37-38.

With regard to the state agency consultants relied on by the ALJ, the Court notes that, of all the medical opinions in the record, they are the only ones that found Bailey was able to perform a full day of work with minimal interruptions. Much like the ALJ's similar finding, however, the state agency consultants provide no reasonable explanation for the same. In each of the consultants' reports, it

states that Bailey is "moderately" limited in his ability to maintain concentration and pace. AR at 77, 89, 101, 115. Similarly, in each report, the consultants explain that "moderately" limited means that Bailey "is capable of attending, concentrating, and completing simple tasks at reasonable pace under ordinary supervision with minimal interruptions with completing a normal workday and workweek." *Id*. at 80, 92, 105, 119. The only reasoning seemingly provided for this finding, again in each report, is that Bailey's thought processes were not impaired and, with respect to activities of daily living, Bailey could "pay attention when stable" for 30-60 minutes, "but when in mixed state only a few minutes[,]" read for 30 minutes when stable, work on "motorcycle projects" for 1-3 hours, and perform "some chores" such as lawn mowing for 1-2 hours "when mentally stable…." *Id*. at 77, 89, 101, 115.

Put simply, it is not clear how Bailey's ability to engage in certain activities of daily of living, such as motorcycle projects, for, at most, three hours at a time corresponds to a person able to complete a "normal workday and workweek." As the vocational expert testified at the hearing, generally speaking, an employer will allow only *one* day of absence per month and require an employee to be "off-task" for no more than ten percent of paid time. *Id*. at 68. In other words, Bailey must be able to work 29 out of 30 days per month and be off-task for no more than 4

8

hours in a 40-hour workweek.  Nothing about the stated activities of Bailey's daily living suggests that he was able to work in such a manner, at least not during the relevant period, *i.e.*, between August 28, 2020 and April 10, 2023.  This is particularly so given that Bailey was only able to perform the daily activities, according to the consultants, *when he was stable*, which the ALJ acknowledged was not always the case.  *Id*. at 29 (stating that Bailey's "depressive episodes" ranged from "once a year" to "every couple of months").

In fact, Bailey's *actual* history of employment and unemployment tells a different tale.  On August 25, 2020, Bailey reported that he had not gone to work in three days, he felt "more stressed" at work, he had thought about quitting, and he could not sustain 20-25 hours of work per week.  *Id*. at 1266.  Bailey testified at the hearing that he stopped this work in August 2020 because he could not "handle the stress of trying to work so many hours."  *Id*. at 54.  On August 31, 2020, Bailey reported that he had started to help his father "around the house" and it had "been good to take a break."  *Id*. at 1258.  On October 13, 2020, Bailey reported enrolling in online "motorcycle mechanic" classes and having a "small gig cleaning a friend's pool[.]"  *Id*. at 1252.  On November 23, 2020, Bailey reported doing classwork for three to four hours per day, as well as working on a dirt bike as a "practicum" component of the class, before needing to take a break.

9

*Id*. at 557.

After continuing with his classwork, on February 7, 2021, Bailey was taken to an emergency room after becoming agitated and threatening toward family members.  *Id*. at 379.  In connection with the same, Bailey was hospitalized from February 8-12, 2021.  *Id*. at 375.  After initially being paranoid and agitated, Bailey "improved notably with medication" before being discharged.  *Id*.  On March 8, 2021, Bailey reported that he "[l]argely stays at home, working on different projects, trying to keep busy, clean up his room, attend to house chores (taking out trash, putting away dishes, do his laundry), 'it's just hard, it's a lot of stuff.'"  *Id*. at 1219.  On April 5, 2021, Bailey reported that he had resumed his motorcycle classes, and he was sleeping "a lot" -- 12 hours per day.  *Id*. at 1210.  On June 8, 2021, Bailey reported that he had difficulty both concentrating and reading a book for long periods of time—falling sleep after about 15 pages.  *Id*. at 1202.  On July 12, 2021, Bailey reported that he applied for a part-time position at Petco.  *Id*. at 1194-95.  On July 23, 2021, Bailey reported that he got a job with Petco and had worked his first "long" shift of eight hours, with this feeling "manageable."  *Id*. at 1186-87.  On August 9, 2021, Bailey reported that he had accepted a job at Paradise Helicopters as a mechanic, working 3 days per week for 8-10 hours at a time.  *Id*. at 1178.  On September 20, 2021, Bailey reported that

he was working 4 days per week on 8-9-hour shifts, but on "Friday, at work, started to feel discouraged, and called out sick for Saturday's shift." *Id*. at 1170-71. On September 23, 2021, Bailey reported that he did "not like his work environment" as there was "too much stress/pressure/responsibility…." *Id*. at 1164. On October 4, 2021, Bailey reported that he had resigned from his job, he was feeling overwhelmed, and that it was "'hard enough taking care of myself.'" *Id*. at 1156. On October 28, 2021, Bailey drove himself to an emergency room after having "suicidal thoughts" for a couple of months that had become "worse" over the last few days, with him thinking of "taking all his pills[.]" *Id*. at 977. Bailey remained in the hospital until November 2, 2021, when his condition had improved sufficiently for discharge. *Id*. at 985. On November 25, 2021, Bailey went to an emergency room, reporting that he felt agitated and anxious. *Id*. at 1051. He was discharged the same day in a "[s]table" condition. *Id*. at 1053.

On January 24, 2022, Bailey reported that he had applied for a job at ACE Hardware due to "financial struggles." *Id*. at 1131. On March 7, 2022, Bailey reported that he was working part-time for his father's pool/pond business on Mondays, Wednesdays, and Fridays, "doing labor such as cleaning and netting." *Id*. at 1513. On April 18, 2022, Bailey reported that he was no longer working for his father because he had missed work "one day" due to wanting a "'mental health

11

day'" and his direct supervisor had not been supportive. *Id*. at 1507. He also reported applying to Safeway for part-time work, but he had not heard back. *Id*. On May 16, 2022, Bailey reported starting part-time work for a friend's landscaping company and "occ[asionally] fulfilling Instacart orders." *Id*. at 1500. On June 16, 2022, Bailey reported planning to return to community college in the Fall of 2022. *Id*. at 1819. On July 7, 2022, although Bailey reported that he had "quit [his] job", four days later, he reported that he had decided to return to work. *Id*. at 1829, 1831. In that regard, Bailey stated that "some days at work will be challenging 'but I need to learn how to be consistent and follow through with things or I'll never get anywhere.'" *Id*. at 1831. On September 7, 2022, Bailey reported that he had started school with one class. *Id*. at 1859. However, on October 24, 2022, Bailey reported that he had dropped the class and now had an "interest in becoming [a] personal trainer…." *Id*. at 1883. On November 7, 2022, Bailey reported working on a new personal training course and feeling "committed to completing it…." *Id*. at 1891.[2]

    In light of the foregoing history, at least for much of the relevant time period

---

[2]Bailey's treatment notes through January 26, 2023—the remaining notes in the record—do not reflect whether Bailey completed any personal training course. *See generally* AR at 1892-1929. Based upon the Court's review, and the ALJ's summary, the treatment notes also do not reflect any further employment, attempts at employment, or educational efforts on Bailey's part for the relevant time period, other than those set forth herein.

between the alleged onset date and the date of the ALJ's decision, there is simply no record of Bailey *ever* consistently sustaining *any* type of endeavor, employment or otherwise, let alone a record showing his ability to consistently work 29 out of 30 days per month and be off-task for no more than 4 hours in a 40-hour workweek.  Rather, the record reflects the completion of *not one* full work *week* in the *entire* period.  Given that there has been no suggestion or argument of malingering or a lack of effort on Bailey's part, this history of futility at sustaining ongoing performance should have been addressed by the ALJ in crafting an appropriate RFC.[3]  *See* Soc. Sec. Admin. Program Operations Manual System (POMS) DI 24510.061, https://secure.ssa.gov/poms.nsf/lnx/0424510061 (last visited Aug. 22, 2024) (stating that an individual's ability to sustain ongoing mental performance for a full workday can be evaluated through, *inter alia*, medical history and reports *and* "[r]eports of performance at past work, recent work attempts, recreational or volunteer activities, or vocational evaluations.").[4]

---

[3]Although the ALJ *mentions* Bailey's inability to sustain employment, at no point does the ALJ attempt to *reconcile* the same with the findings made in the RFC.

[4]The Court further notes that, unlike Bailey's employment history, which is not discussed at all in terms of its consistency with the RFC, the ALJ does state that the RFC is "consistent" with certain selected treatment notes, such as those stating that Bailey was hospitalized.  AR at 37-38.  Other than concluding this "consistency", however, the ALJ provides no explanation for how or why the notes are consistent. The opposite, for instance, appears to be true.  For example, Bailey's hospitalizations alone, amounting to 4 or 5 days on each occasion, would have rendered him unable to work 29 of 30 days per month and were thus seemingly inconsistent with the RFC (and the ALJ's conclusions).

For these reasons, this case must be remanded for the ALJ to provide further explanation of and support for the RFC. In particular, the ALJ must consider Bailey's history of employment, attempts at employment, and other similar endeavors, *see id.*, and explain how the same are consistent with the RFC. To be clear, based upon the current record, it does not appear that Bailey has *ever* satisfied the employer tolerances for time off-task and absenteeism, per the vocational expert's testimony, during the relevant period. The ALJ should also explain, rather than simply state, how Bailey's treatment notes *in toto* are consistent with the RFC.[5]

## **CONCLUSION**

To the extent set forth herein, the Commissioner's decision, denying Bailey's applications for disability insurance benefits and supplemental security income, is REVERSED. This case is REMANDED to the Commissioner for further administrative proceedings consistent with this Order. The Clerk of Court is directed to close this case.

---

[5]Finally, the Court notes the ALJ's observation that one of Bailey's doctors stated, in January 2023, that his "condition is currently relatively well controlled with medications and therapy…." AR at 35. Even if such a statement could be relied on as the basis for rendering Bailey not "currently" disabled, on which the Court does not express an opinion, it would not mean that Bailey was not disabled for the remainder of the relevant period, *i.e.*, the remainder of 2020, the entirety of 2021, and at least a broad chunk of 2022.

IT IS SO ORDERED.

DATED: August 23, 2024 at Honolulu, Hawaiʻi.

_____
Derrick K. Watson
Chief United States District Judge